UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY RADAME MENDEZ-MEJIA,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-03149-GJL

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Anthony Radame Mendez-Mejia ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On September 3, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody and injunctive relief related to re-detention or, in the alternative, a bond hearing before an immigration judge.[1] *Id.*

On September 18, 2026, Respondents filed a Return (Dkt. 6), supported by a sworn declaration from ICE Deportation Officer Kurtis Reed (Dkt. 6) and an unsworn declaration from

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 2.

their counsel, Katherine G. Collins (Dkt. 8). On September 23, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO") preventing his transfer to a detention facility outside of this District while these proceedings are pending. Dkt. 9. On that same day, the Honorable David G. Estudillo provisionally granted the Motion for a TRO, pending a response from Respondents and this Court's review of the merits of the Motion. Dkt. 10. Respondents filed their Response indicating no opposition to the Motion for a TRO on September 24, 2026. Dkt. 12.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition and **ORDERS** Petitioner's immediate release and permanent injunctive relief as set forth below. The Motion for Temporary Restraining Order (Dkt. 9) is thus **DENIED as moot**.

## I. BACKGROUND

As counsel for Petitioner has asserted a significant lack of cooperation by various Government agencies in gathering background information in support of the instant Petition (*see generally* Dkt. 1),[2] the Court sets forth here background mainly provided in Respondents' Return and supporting declarations.

Petitioner is a native and citizen of Honduras currently residing in Washington State with his family, including his one-year old U.S. citizen child and partner expecting their second child

[2] Counsel for Petitioner, who also appears to be representing Petitioner in his immigration proceedings before an IJ, states ICE refused Petitioner and counsel's requests for documentation, and United States Citizenship and Immigration Services ("USCIS") denied their Freedom of Information Act ("FOIA") request for Petitioner's files. Dkt. 1 ¶¶5, 6. While counsel was able to access some documentation after entering a Notice of Appearance in Petitioner's reasonable fear hearing proceedings, they are still not in possession of all documentation necessary for this Petition, such as a complete copy of Petitioner's "A-file." *Id.* ¶¶ 36, 37, 47. The documentation Petitioner's counsel does have is attached to the Petition. *See* Dkts. 1-1–1-6.

in early November, 2026. Dkt. 1 ¶ 25. Petitioner has lived continuously in the United States since 2021, and maintains no criminal history. *Id*. ¶¶ 25–26.

On March 4, 2016, Petitioner entered the United States without inspection near Hidalgo, Texas, and was apprehended by U.S. Customs and Border Protection ("CBP"). Dkt. 7 ¶ 3 (Reed Decl.); Dkt. 8-1, Ex. A (Form I-213). Following a credible fear finding by an asylum officer, Petitioner was issued a Notice to Appear ("NTA") for removal proceedings on March 22, 2016, charging him with inadmissibility under the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I). Dkt. 7 ¶ 4. On May 10, 2016, an Immigration Judge ("IJ") in Pompano Beach, Florida, ordered Petitioner removed to Honduras. *Id*. ¶ 5. Petitioner waived an appeal and was subsequently removed from the United States to Honduras on May 23, 2016. *Id*. ¶¶ 5–6; Dkt. 8-1 at 3, Ex. A.

Several years later, Petitioner again entered the United States without inspection on April 4, 2019, from the Mexican border near Otay Mesa, California, and was apprehended by CBP. Dkt. 7 ¶ 7; Dkt. 8-1 at 3, Ex. A. Petitioner was once more charged as being inadmissible under INA § 212(a)(7)(A)(i)(I), and was served with an NTA for removal proceedings before being returned to Mexico to await his June 3, 2019, immigration court hearing. Dkt. 7 ¶ 7; Dkt. 8-1 at 3, Ex. A.

On June 3, 2019, Petitioner, proceeding *pro se*, appeared for a master calendar hearing before an IJ in San Diego, California. Dkt. 7 ¶ 8. The IJ continued proceedings to July 3, 2019, and provided Petitioner with a Notice of Hearing listing the date, time, and location. *Id*. However, Petitioner failed to appear at the July 3, 2019 hearing, and the IJ ordered him removed to Honduras *in absentia*. *Id*. ¶ 9; Dkt. 8-2, Ex. B (IJ Order July 3, 2019).

On March 12, 2021, Petitioner again entered the United States without inspection near Roma, Texas, and was apprehended by CBP. Dkt. 7 ¶ 10. Petitioner was deemed inadmissible under INA § 212(a)(6)(A)(i), served with an NTA, and released on an Order of Recognizance ("OREC").[3] *Id.* ¶ 10; Dkt. 8-1 at 4, Ex. A; Dkt. 8-3, Ex. C (OREC); Dkt. 8-4, Ex. D (NTA). According to Respondents, Petitioner's NTA was never filed with the immigration court, and removal proceedings were never initiated. Dkt. 7 ¶ 11.

On July 29, 2026, when Petitioner reported for a check-in at the ICE Office in Seattle, Washington, an ICE records check revealed the existence of Petitioner's prior removal orders. Dkt. 7 ¶ 11. Petitioner was taken into custody pursuant to a Warrant for Arrest of Alien, and transported to NWIPC. Dkt. 7 ¶ 11; Dkt. 8-6, Ex. F (Warrant of Arrest). At that time, ICE revoked Petitioner's OREC and cancelled his NTA. Dkt. 7 ¶ 11; Dkt. 8-4, Ex. D.

The next day, on July 30, 2026, ICE interviewed Petitioner and served him with a Notice of Intent/Decision to Reinstate Prior Order, indicating that ICE intended to reinstate Petitioner's 2019 order of removal. Dkt. 7 ¶ 12; Dkt. 8-5, Ex. E (Notice of Intent). On that same day, Petitioner claimed fear of return to Honduras in a sworn statement and was referred for a reasonable fear interview with an asylum officer. Dkt. 7 ¶ 12; Dkt. 8-7, Ex. G.

Respondents make the following assertions related to proceedings following Petitioner's referral for a reasonable fear interview, but attach no documentary evidence in support. *See* Dkt. 8. On August 20, 2026, Petitioner was interviewed by an asylum officer, who concluded that Petitioner had not established a reasonable fear of persecution or torture. Dkt. 7 ¶ 13. Petitioner requested review of the finding by an IJ. *Id.* On September 3, 2026, an IJ in Tacoma,

---

[3] In the Petition, Petitioner asserts that he re-entered the United States in 2021 using the CBP One application, was granted parole into the country, issued an OREC, and enrolled in the Intensive Supervision Appearance Program ("ISAP") under the Alternatives to Detention ("ATD") program. Dkt. 1 ¶ 39.

Washington, concurred that Petitioner had not established a reasonable fear of persecution or torture. *Id*. ¶ 14. Petitioner remains detained at the NWIPC. *Id*. ¶ 15.

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241 on September 3, 2026. Dkt. 1. On September 4, 2026, the Court entered a Scheduling Order, directing a response to the Petition by September 18, 2026, and a reply by September 23, 2026. Dkt. 2. On September 23, 2026, Petitioner filed the Motion for a TRO, which was provisionally granted on the same day. Dkts. 9, 10. Petitioner also filed a Traverse on September 23, 2026. Dkt. 11. On September 24, 2026, Respondents responded to the Motion for a TRO, indicating no opposition to the Motion. Dkt. 12.

In the Petition, Petitioner alleges Respondents violated constitutional guarantees of due process under the Fifth Amendment by re-detaining him without pre-deprivation notice and hearing. Dkt. 1 at 11–17. Having reviewed the parties' arguments and relevant legal authority, the Court concludes that Petitioner did not receive constitutionally adequate process and **GRANTS** habeas relief for the following reasons.

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, petitioners have the burden of demonstrating that there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

In their Return, Respondents contend that Petitioner is subject to a reinstated removal order and therefore his detention is governed by 8 U.S.C. § 1231(a), which authorizes mandatory detention during a 90-day removal period, followed by discretionary detention after expiration of that 90-day removal period. Dkt. 6 at 4 (citing *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9 Cir. 2017); 8 U.S.C. § 1231(a)(2), (6)). Respondents argue Petitioner's detention is authorized because, at the time of their briefing, he remains within the 90-day removal period, as he has been detained for 51 days. Dkt. 6 at 4. Respondents do recognize, however, that this Court and others in the District have held discretionary revocation of release requires pre-deprivation due process, even for a noncitizen subject to a final removal order. *Id*. *See, e.g.*, *Singh v. Mullin*, No. C26-2778-MLP, 2026 WL 2654180, at *2 (W.D. Wash. Sept. 9, 2026); *Castillo-Patterson v. Hernandez*, No. 2:26-CV-01373-JNW, 2026 WL 1745827, at *4 (W.D. Wash. June 17, 2026); *Khim v. Bondi*, No. 2:25-CV-02383-RSL, 2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025).

### A. Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation

under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Here, after recognizing Petitioner was released in 2021 pursuant to an OREC, Respondents assert "[w]ithout conceding the issue, [they] do not possess evidence of the process Petitioner received in connection with the cancellation of Petitioner's OREC and revocation of Petitioner's release." Dkt. 6 at 5, 6.

Even without this admission, the Court finds all three *Mathews* factors weigh in favor of Petitioner: (1) he has a protected liberty interest against re-detention within NWIPC following his prior release, (2) the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation, and (3) the governmental interest in Petitioner's re-detention without a hearing is minimal or non-existent.[4]

In so finding, the Court notes that, irrespective of whether re-detention was authorized or warranted, the Constitution guarantees notice and an opportunity to be heard before Petitioner can be removed from his family, home, employment, and community. Such disruptions to the

---

[4] The application of the *Mathews* factors to the case at bar is consistent with a high volume of similar cases within the District. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321–24 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136–37 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3–4 (W.D. Wash. Sept. 17, 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7–9 (W.D. Wash. Oct. 7, 2025); *Francois v. Wamsley*, No. 25-cv-2122-RSM, 2025 WL 3496557, at *3–4 (W.D. Wash. Dec. 5, 2025); *A.C.J. v. Hermosillo*, No. 2:25-cv-02486-DGE, 2026 WL 73857, at *3–5 (W.D. Wash. Jan. 9, 2026); *Perez v. Hermosillo*, No. 25-cv-2542-RSM, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026); *Yildirim v. Hermosillo*, No. 25-cv-2696-KKE, 2026 WL 111358, at *2–4 (W.D. Wash. Jan. 15, 2026); *G.S. v. Hermosillo*, No. 25-cv-2704-TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026); *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026); *Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *3–4 (W.D. Wash. Jan. 30, 2026); *Arroyo Silva v. Hermosillo*, No. 2:26-cv-00179-GJL, 2026 WL 445003, at *4–6 (W.D. Wash. Feb. 17, 2026); *Singh v. Noem*, No. 2:26-cv-00403-GJL, 2026 WL 555397, at * 2–3 (W.D. Wash. Feb. 27, 2026) .

life of this individual are constrained by the constitutional guarantee of providing a pre-deprivation notice and hearing required by application of the *Mathews* factors in this case. *See, e.g., P.T. v. Hermosillo*, No. 2:25-cv-02249-KKE, 2025 WL 3294988, at *4 (collecting cases); *G.S.*, 2026 WL 179962, at *3 (same). Indeed, these processes serve "as a crucial bulwark against the unfettered disregard of individual liberty interests." *Id.* at *3.

Accordingly, the Court finds that, in re-detaining Petitioner without prior notice and an opportunity to be heard, Respondents violated Petitioner's procedural due process rights. Petitioner is, therefore, entitled to habeas relief for these constitutional deprivations in the form of immediate release from custody.

**B. Remedy**

Having determined that Petitioner is detained without being provided the process due to him, the Court now determines the appropriate remedy for his unlawful confinement. As relief, Petitioner seeks immediate release from custody and a permanent injunction prohibiting any future re-detention without notice and a hearing before a neutral decisionmaker prior to re-detention. Dkt. 1 at 17–18.

Habeas corpus relief is "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The equitable roots of habeas corpus are embodied by "the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, [shall] 'dispose of the matter as law and justice require.'" *Fay v. Noia*, 372 U.S. 391, 438 (quoting 28 U.S.C. § 2243). A habeas court is thus authorized to "fashion appropriate relief other than immediate release," *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), in order to ensure an effective remedy for unlawful detention. *Cf. Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable

powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

These equitable principles authorize courts not only to remedy unlawful detention through release, but also to craft forward-looking relief necessary to prevent recurrence of the constitutional violation. Where a petitioner demonstrates a cognizable danger of repeated unlawful detention, permanent injunctive relief falls within the breadth and flexibility inherent in habeas equitable powers. *See Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("The necessary determination [for granting a permanent injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (quotations omitted).

In this case, Petitioner has established such "cognizable danger of recurrent violation." *Cummings*, 316 F.3d at 897. ICE has already detained Petitioner once without process – he was arrested during a scheduled check-in and only identified as having an outstanding order of removal after he reported to the Office, *see* Dkt. 7 ¶ 11, raising concern that, absent injunctive relief, he may be subject to the same due process violation again. Several courts in this District have granted similar relief under comparable circumstances. *See, e.g.*, *Castillo-Patterson*, 2026 WL 1745827, at * 4; *Wana v. Bondi*, No. 2:25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Yuksek v. Bondi*, No. 2:25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. 2:24-cv-2187, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court finds an order of immediate release and a permanent injunction appropriate. The Court **GRANTS** habeas relief as set forth in the conclusion below.

**C. Motion for Temporary Restraining Order (Dkt. 9)**

On September 23, 2026, Petitioner moved for a Temporary Restraining Order prohibiting the Government from transferring him to a detention facility outside of this District while these proceedings are pending. Dkt. 9. Having now ruled on the Petition, the Court **DENIES as moot** the Motion for TRO. *Id*.

**IV. CONCLUSION**

For the foregoing reasons, the Court **ORDERS** the following:

(1) Petitioner's habeas Petition (Dkt. 1) is **GRANTED**;

(2) Petitioner's Motion for Temporary Restraining Order (Dkt. 9) is **DENIED as moot**;

(3) Respondents **SHALL release** Petitioner from custody **within 24 hours** of the filing of this Order under his most recent conditions of release, if any;

(4) Respondents **SHALL NOT re-detain** Petitioner without advance written notice and a pre-detention hearing before a neutral decisionmaker; and

(5) Respondents **SHALL** file a certification **within 24 hours** of the issuance of this Order, confirming that the Petitioner has been released from custody and providing the date and time of his release.

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 24th day of September, 2026.



Grady J. Leupold
United States Magistrate Judge